IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **01-cv-383-JLK**

**KATHLEEN TODD,**

      Plaintiff,

v.

**MONTANA SILVERSMITHS, INC.; ROD'S WESTERN PALACE, INC., AND
CORRAL WEST RANCHWEAR, INC.**

      Defendants.

---

MEMORANDUM OPINION AND ORDER

---

KANE, J.

     This action for copyright infringement was brought by Plaintiff Kathleen Todd

on March 2, 2001.  Todd is an individual Colorado resident who designs, manufactures,

and sells "western-themed" jewelry. Defendant Montana Silversmiths, also designs,

manufactures, and sells "western-themed" jewelry. Defendants Rod's Western Palace

and Corral West Ranchwear are resellers of Montana's jewelry.

     In June of 1996, Plaintiff created a barbed-wire style bracelet and a set of

matching earrings. Before designing her jewelry, Plaintiff sought out classic western

symbols such as boots, spurs, cowboy hats, horseshoes, etc., and brought them into

her studio. Her intention for the particular pieces at issue here was to "make jewelry that

looked like barbed-wire" but was more "aesthetically pleasing." She filed for and received copyright registrations for her bracelet and earrings on August 31, 1999, and November 6, 2000, respectively. Plaintiff has been advertising and selling both pieces since she designed them in 1996.

Plaintiff alleges that beginning in the summer of 2000, Defendant Montana began selling a line of jewelry similar to Plaintiff's. The particular pieces in question are four variations of Defendant Montana's two-strand, three-barb bracelet, as well as a set of matching earrings. Defendant Montana subsequently designed several additional variations of these pieces, but these later variations are not at issue here.

On August 2, 2002, Plaintiff moved for summary judgment that Defendant Montana's jewelry depicted in Plaintiff's Exhibits 3, 40, 4, and 5 infringe on Plaintiff's copyright as a matter of law. On August 30, Defendants filed two separate cross-motions for summary judgment. The first argues that Plaintiff has made no original contributions to her barbed-wire jewelry that do not already exist in ordinary public domain barbed-wire, so as a result, her jewelry lacks sufficient originality to be the subject of a valid copyright. The second motion is closely related, arguing that since none of the individual elements contained in Plaintiff's jewelry are properly copyrightable, Defendants may duplicate them without violating Plaintiff's copyright.

I GRANT Defendants' Motion for Summary Judgment Based on the

Unprotectability of Plaintiff's Barbed-Wire Jewelry Under the Copyright Laws.

To prove copyright infringement, Plaintiff must show that: (1) she held a valid copyright, and (2) that Defendants copied protectable elements in her work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 US 340, 361 (1991). Possession of a copyright registration certificate creates a presumption of validity, 17 U.S.C. § 410(c), although that presumption is rebuttable. *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980) ("[A] certificate of registration creates no irrebuttable presumption of copyright validity."). Defendants may rebut the presumption created by the certificate by presenting evidence which casts doubt on the copyrightability of the work in question. *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997).

The validity of Plaintiff's copyright is a question appropriate for summary judgment. *Magic Mktg., Inc. v. Mailing Servs. of Pittsburgh, Inc.*, 634 F. Supp. 769 (W.D.Pa. 1986) ("The issue of copyrightability is typically resolved by a motion for summary judgment."). *But see* Julia Reytblat, *Is Originality in Copyright Law a "Question of Law" or a "Question of Fact?": The Fact Solution*, 17 Cardozo Arts & Ent. L.J. 181 (1999) (arguing that a jury is better equipped than a judge to evaluate the originality necessary to support copyright).

For an item to be copyrighted, it must exhibit some form of originality. *Feist*, 499 US at 345. The threshold of originality needed to qualify for copyright protection is

admittedly low. *Feist* requires only that the author "make the selection or arrangement

independently (*i.e.*, without copying that selection or arrangement from another work),

and that [the work] display some minimal level of creativity." *Id.* at 358. Novelty is not

required for originality, but the author must have made some contribution to the work

which is irreducibly his own. *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99,

102 ("No matter how poor artistically the 'author's' addition, it is enough if it be his

own.").

      Copyright protection only extends to expression, never the underlying idea. 17

U.S.C. § 102(b). Even an item that possesses a valid copyright may contain both

protectable and unprotectable types of expression. *Feist*, 499 US at 348. The former

consists of the author's original creative contributions, 17 U.S.C. § 102(a), while the

latter consists of (among other things): purely functional elements, 17 U.S.C. § 102(b),

public domain elements, *Nimmer on Copyright* 1.05[A][2], scenes a faire, *id.* at [B][3],

forms of expression which are inextricably linked to the underlying idea, *id.* at [B][4],

and simple changes of medium, *id.* at 2.08[C][2].

      The question at issue here is what element, feature, or aspect of Plaintiff's

jewelry, which does not fall into one of the unprotected categories listed above,

properly qualifies as original expression? Defendants argue that Plaintiff's jewelry

contains no original expression, because each constituent element falls into one of

4

these unprotected categories. Examining each element in turn, Defendants assert that:

C      The wire twist, shape of the barbs, end caps, ear posts, and earring clasps are

        unprotectable because they are based on functional or utilitarian considerations.

C      The placement of the barbs and the spacing between them is dictated by

        elemental symmetry and is unprotectable as expression inherent in the idea of

        barbed-wire jewelry.

C      The size and shape of Plaintiff's jewelry are based on common "cuff-style" and

        "hoop-style" designs which exist in the public domain.

C      The use of silver wire rather than steel is unprotectable because a change of

        medium does not qualify for copyright protection.

Defendants argue that since none of these elements are protectable, and since there is

nothing else outside these elements to which protection could attach, Plaintiff cannot

posses a valid copyright.

        Plaintiff argues that Defendants' emphasis on the individual elements of her

jewelry is misplaced. Instead, she claims that the originality inquiry centers not on the

protectability of the elements themselves, but on the overall design of the pieces.

Plaintiff asserts that copyright protection actually attaches to the particular way she

has "formed, placed, balanced and harmonized together the elements of her barbed wire

styled jewelry." This choice of words evokes the language of 17 U.S.C. § 101 quoted in

*Feist*, where the Supreme Court acknowledged that copyright protection could be granted to the manner in which a set of otherwise unprotectable facts were "selected, coordinated, or arranged." 499 U.S. at 356.

Plaintiff urges the court to view her jewelry holistically, arguing that an artistic creation is necessarily greater than the sum of its parts. She advances a view that copyright can reside in a work's "creative gestalt"—a certain ineffable quality which is incapable of objective description.

To reconcile these two competing theories of where Plaintiff's copyright resides, I consider the language of *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001), instructive. *Yurman* involved several pieces of copyrighted jewelry composed of silver, gold, twisted cable, and colored stones. The court held that even though these elements existed individually in the public domain, the "originality in Yurman's four designs inheres in the ways Yurman has recast and arranged those constituent elements." *Id.* at 110. While this language supports Plaintiff's theory of copy protection, there is a critical distinction that must be drawn between the facts of *Yurman* and those in the present action. Unlike the designer in *Yurman*, Plaintiff has not "recast and arranged" the public domain elements of her jewelry in an original way. Instead, she has taken the constituent elements of barbed-wire and arranged them in a way that by all objective measures still matches the elemental arrangement of barbed-

wire. (One can imagine any number of original ways to rearrange silver wire, barbs, end caps, etc., although the final product might be neither aesthetically pleasing, nor wearable as jewelry.)

While Plaintiff is no doubt a skilled artist capable of making jewelry with a certain aesthetic appeal, she has failed to show what copyrightable feature(s) she has added to her work to separate it from ordinary public domain barbed-wire. Plaintiff is correct that the court should not take an excessively atomistic view of her jewelry. Just as Shakespeare's Hamlet is undeniably more than an assemblage of letters and Van Gogh's Starry Night is not just a fortuitous collection of brush strokes, Plaintiff's jewelry cannot simply be dissected into its component pieces. Yet while the combination of public domain letters in Hamlet is entirely unique, the same cannot be said of the combination of the public domain elements in Plaintiff's jewelry. The fact remains that for all her aesthetic choices, the final arrangement of the elements in her jewelry still corresponds to the arrangement of public domain barbed-wire.

Although a work's "creative gestalt" is fundamental to aesthetic criticism, when evaluating copyrightability, the concept lacks the precision necessary to maintain predictability in the law. Like all good art, Plaintiff's jewelry has an emotional appeal that cannot be described solely with reference to its component pieces. But "creative gestalt" is too inchoate a concept for courts to use if they are to fashion a consistent

copyright jurisprudence.[1]

The clearest question for decision concerns the degree of originality required for copyright. Plaintiff claims copyright in an arrangement of lesser elements that, when viewed individually, are not capable of supporting copyright. While *Feist* holds that copyright may legitimately be extended to such an arrangement, I conclude that Plaintiff's *particular* arrangement does not possess the requisite originality because of its lingering similarity to barbed-wire. That none of the elements of Plaintiff's jewelry is capable of being copyrighted individually suggests an arrangement of these elements must be held to a more exacting standard. This follows logically from the proposition that when dealing with items derived from the public domain, a work is copyrightable only if the creator has added "some substantial, not merely trivial, originality." *Durham*, 630 F.2d at 910.

There is some troublesome language in the widely cited case of *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976), that "'while a copy of something in the public domain will not, if it be merely a copy, support a copyright, a distinguishable variation will . . . .'" (quoting *Gerlach-Barklow Co. v. Morris & Bendien, Inc.*, 23 F.2d 159, 161 (2d Cir. 1927)). No one could seriously contend that Plaintiff's jewelry is indistinguishable from actual barbed-wire. It is, however, unclear if the term

---

[1] The incompatibility of law with aesthetics is alluded to in the Latin maxim "*de gustibus non est disputandum* [concerning matters of taste there can be no argument]."

"distinguishable," as used by the court in *Batlin,* means visually distinguishable or conceptually distinguishable. For two reasons, the latter is the better interpretation.

First, if a court were to grant copyright in an arrangement that is visually but not conceptually distinguishable from barbed-wire, it would risk giving Plaintiff a monopoly over the idea itself. Arguably it would be impossible for other artists to create barbed-wire style jewelry (no matter how visually distinguishable) without infringing on Plaintiff's copyrighted arrangement. *See Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003).

Second, even if it is visually distinguishable, Plaintiff's arrangement is not truly "original" in the ordinary meaning of the word. Instead, her arrangement remains that of barbed-wire, which has been in the public domain for years. It is apparent Plaintiff's jewelry has a certain "je ne sais quoi" that ordinary barbed wire does not possess. Despite the artistic appeal of her work, however, whatever ineffable qualities it possesses stem from "trivial" variation, not "substantial" variation as contemplated in *Durham*.

Any expression contained in Plaintiff's work is a necessary concomitant of the idea of barbed-wire jewelry. As such, it may not be copyrighted. "Only by vigorously policing the line between idea and expression can we ensure both that artists receive due reward for their original creations and that proper latitude is granted other artists to

make use of ideas that properly belong to us all." *Satava v. Lowry*, 323 F.3d at 805.


Based on the foregoing, Defendant's Motion for Summary Judgment Based on

the Unprotectability of Plaintiff's Barbed-Wire Jewelry Under the Copyright Laws is

GRANTED and Plaintiff's Partial Motion for Summary Judgment is DENIED.

Defendants' Motion for Summary Judgment Based on the Absence of Evidence That

They Copied Protectable Elements is DENIED as MOOT.  Judgment in this case shall

enter in favor of Defendants and against Plaintiff.  The parties shall bear their own

costs.


July 19, 2005                                    **s/John L. Kane**
                                                 SENIOR U.S. DISTRICT COURT JUDGE